## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CARDIOVALVE, LTD. and MTH IP, L.P.,

          Plaintiffs,

   v.

EDWARDS LIFESCIENCES CORP. and EDWARDS
LIFESCIENCES LLC,

          Defendant.

Civil Action No. ___

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Cardiovalve, Ltd. ("Cardiovalve") and MTH IP, L.P. ("MTH") (collectively, "Plaintiffs"), by and through their counsel, bring this Complaint for patent infringement against Edwards Lifesciences Corp. and Edwards Lifesciences LLC (collectively, "Edwards"), and allege as follows:

1.    This is an action for patent infringement concerning Edwards' PASCAL Precision Transcatheter Valve Repair System, including the PASCAL and PASCAL Ace implants (collectively, "PASCAL"), which comprises a transcatheter system for heart valve repair via an implanted device.  As Edwards has known for years, PASCAL uses Plaintiffs' intellectual property, including at least U.S. Patent No. 10,702,385 ("the '385 patent").

2.    Edwards knew of its infringement before it even secured FDA approval for PASCAL.  By no later than June 2021, Edwards had independently determined that the '385 patent posed a threat to its offerings, and preemptively initiated *inter partes* review ("IPR") proceedings seeking to cancel the '385 patent and remove that roadblock.

3.      At no point prior to filing its IPR did Edwards contact Plaintiffs to seek a license to the '385 patent, instead going all-in on its attempt to have the patent overturned by the United States Patent and Trademark Office ("USPTO").

4.      Edwards' gambit failed.  It lost the IPR, with the USPTO upholding the '385 patent claims in a Final Written Decision issued on December 6, 2022.

5.      Edwards lost again when it appealed the IPR decision, as the United States Court of Appeals for the Federal Circuit affirmed the patentability of the challenged claims on June 9, 2025.

6.      Although those IPR and appeal proceedings lasted more than four years, Edwards never sought to negotiate with Plaintiffs to lawfully use their patented technology during the interim, even though Edwards had gained FDA approval for PASCAL in September 2022 and began selling and marketing it in the United States shortly thereafter.

7.      Only after losing its appeal did Edwards first contact Plaintiffs to license or purchase their intellectual property, including the '385 patent.  Yet, despite Plaintiffs' willingness to negotiate, Edwards did not continue to engage.

8.      To this day, Edwards continues to market and sell its infringing PASCAL system, even after the appeals court upheld the '385 patent, and even though Edwards knows, and has known for years, that it infringes the '385 patent.

9.      As set forth below, Plaintiffs bring this action to enforce their patent rights and curtail Edwards' willful infringement.  Edwards has known for years that PASCAL infringes the '385 patent.  It tried to challenge the '385 patent at the USPTO and the Federal Circuit, but lost. Edwards infringes Plaintiffs' valid '385 patent, and now must compensate Plaintiffs for its infringement.

**THE PARTIES**

10.     Cardiovalve is a company organized and existing under the laws of Israel with its principal place of business in Or Yehuda, Israel.

11.     Cardiovalve is the owner and named assignee of the '385 patent.

12.     MTH is a limited partnership organized and existing under the laws of the State of Delaware.

13.     MTH is the exclusive licensee of the '385 patent within the field of edge-to-edge repair.  Pursuant to its exclusive license to the '385 patent, MTH is authorized to bring suit for infringement of the '385 patent.

14.     Plaintiffs possess substantially all rights in the '385 patent, including the right to bring claims for infringement of the '385 patent, and the right to recover all remedies.

15.     On information and belief, both Edwards Lifesciences Corporation and Edwards Lifesciences LLC are corporations organized and existing under the laws of the State of Delaware, with principal places of business in Irvine, CA.

16.     Edwards Lifesciences LLC is the registered Applicant with the FDA for, and has received approval to sell and market, PASCAL.

17.     Edwards Lifesciences Corporation and Edwards Lifesciences LLC were both petitioners in Edwards' IPR against the '385 patent and appellants in Edwards' appeal from the IPR decision in favor of Cardiovalve.

18.     On information and belief, Edwards Lifesciences LLC is a subsidiary of Edwards Lifesciences Corporation.

**JURISDICTION AND VENUE**

19.     This is an action for patent infringement under 35 U.S.C. § 271.

- 3 -

20.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 because this is a matter arising under the United States patent statutes, 35 U.S.C. § 101 *et seq.*, for infringement of a United States patent.

21.     This Court has personal jurisdiction over Edwards Lifesciences Corporation and Edwards Lifesciences LLC because both companies are located within this District and have continuous and systematic contact within this District.

22.     In particular, both Edwards Lifesciences Corporation and Edwards Lifesciences LLC are incorporated in the state of Delaware and have a registered office at 1209 Orange Street, Wilmington, Delaware.  Both defendants are registered to do business in the State of Delaware, have a designated agent incident to such registration, and have established sufficient minimum contacts within the State of Delaware such that they should reasonably and fairly anticipate being haled into court in the District of Delaware.

23.     Edwards has availed itself of this forum by filing suit in at least the following litigations:  *Edwards Lifesciences LLC v. Boston Scientific Corp.*, No. 18-cv-1294; *Edwards Lifesciences AG v. Medtronic Inc.*, No. 09-cv-873; and *Edwards Lifesciences AG v. Corevalve Inc.*, No. 08-cv-91.

24.     Edwards has also consented to the jurisdiction of this forum in at least the following litigations: *Aortic Innovations LLC v. Edwards Lifesciences Corp.*, Nos. 21-cv-1377 and 23-cv-158; *Abbott Cardiovascular Systems, Inc. v. Edwards Lifesciences Corp.*¸ No. 19-cv-149; *Boston Scientific SciMed, Inc. v. Edwards Lifesciences LLC*, No. 18-cv-1535; and *Boston Scientific Corp. v. Edwards Lifesciences Corp.*, No. 16-cv-275.

25.     On information and belief, both Edwards Lifesciences Corporation and Edwards Lifesciences LLC make, use, sell, offer to sell, and/or import PASCAL—and instruct or direct

customers regarding the use of PASCAL—throughout the United States, including in the state of Delaware.

26.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because both defendants are incorporated in the state of Delaware.

## THE '385 PATENT

27.    A true and correct copy of the '385 patent is attached hereto as **Exhibit A**.

28.    The '385 patent issued on July 7, 2020, from U.S. Patent Application No. 16/284,331, filed February 25, 2019.  The '385 patent claims priority on its face to a series of earlier patent applications, the earliest of which is Provisional Application No. 61/515,372, filed on August 5, 2011.  The '385 patent is titled "Implant for Heart Valve," and is directed towards methods of implanting and using a device to repair regurgitation at a patient's native heart valve.

29.    As set forth on the face of the patent, the inventor of the '385 patent is Gil Hacohen, and the assignee is Plaintiff Cardiovalve, Ltd.

30.    A true and correct copy of the *Inter Partes* Review Certificate, in which the USPTO confirmed the patentability of the '385 patent claims, issued November 20, 2025, and is attached hereto as **Exhibit B**.

## EDWARDS' WILLFUL INFRINGEMENT OF CARDIOVALVE'S '385 PATENT

31.    On September 15, 2022, Edwards received FDA approval for PASCAL.  On information and belief, in the years leading up to approval of PASCAL, Edwards conducted a search to determine if making, using, offering to sell, or selling, or importing into the United States, the PASCAL system, would infringe any United States patents.

32.     On information and belief, to the extent Edwards was not already aware that use of PASCAL would infringe the '385 patent, that search revealed to Edwards that the use of PASCAL as intended would infringe the '385 patent.

33.     Edwards also actively demonstrated its awareness of the teachings of the '385 patent prior to receiving FDA approval for PASCAL.  Starting in July 2020, Edwards began citing the publication that would issue as the '385 patent as relevant prior art in dozens of its own patent applications.

34.     After learning this, however, Edwards did not contact Plaintiffs to seek a license to the '385 patent.  Instead, on June 4, 2021, Edwards preemptively filed a Petition for *inter partes* review, IPR2021-01051, asking the USPTO to cancel all claims of the '385 patent.

35.     Prior to Edwards' IPR petition, the parties had never communicated about PASCAL's infringement of the '385 patent.

36.     Edwards' IPR was unsuccessful.

37.     On December 6, 2022, the Patent Trials and Appeals Board ("PTAB") of the USPTO issued a Final Written Decision rejecting Edwards' arguments, and finding that the claims of the '385 patent are not unpatentable.

38.     Edwards appealed the PTAB's decision to the United States Court of Appeals for the Federal Circuit, but on June 9, 2025, that Court rejected Edwards' arguments and affirmed the PTAB's decision in favor of Cardiovalve.

39.     In view of its unsuccessful IPR challenge to the '385 patent, Edwards is estopped from raising any invalidity ground in another proceeding—including this one—that could have been raised in the IPR, pursuant to 35 U.S.C. § 315(e).

40.    During the pendency of the IPR proceedings and appeal from June 2021 until June 2025, Edwards never reached out to Plaintiffs to discuss its unauthorized use of the '385 patent.

41.    Only after its failed appeal of its failed IPR did Edwards first attempt to contact Plaintiffs concerning Cardiovalve's '385 patent.

42.    In early fall of 2025, through an intermediary financial adviser, Edwards' Corporate Vice President for Strategy & Corporate Development contacted one of MTH's shareholders.

43.    Thereafter, MTH's lead director wrote to that same Edwards executive on September 30, 2025, seeking to discuss Cardiovalve's '385 patent and other intellectual property. A true and correct copy of that email is attached hereto as **Exhibit C**.  As MTH's director wrote, "[i]f anyone representing Edwards wishes to discuss our intellectual property rights, please direct them to me.  I will make myself available."  Ex. C.  Edwards never responded to that outreach.

44.    Instead, the next month, during the Transcatheter Cardiovascular Therapeutics conference in October, 2025 in San Francisco, California, Edwards, through its same corporate representative, held a brief meeting with the MTH shareholder.  Acknowledging Plaintiffs' patent rights and expressing interest in resolving the issue through a potential transaction, Edwards expressed the possibility of acquiring the MTH shareholder's stake in MTH and/or the '385 patent.

45.    After that meeting, Edwards made no further attempts to obtain a lawful right to use Plaintiffs' patented technology.

46.    Plaintiffs bring this lawsuit to stop Edwards' willful infringement of Cardiovalve's '385 patent and to recover damages sufficient to compensate them for Edwards' infringement, and for enhanced damages to deter Edwards from future willful infringement.

47.    On information and belief, Edwards has not made any material changes to PASCAL, or its methods of delivery and use, as a result of its knowledge of its infringement of

the '385 patent. Edwards continues to market and sell PASCAL for the same intended use, despite knowing that such use infringes the '385 patent and that the claims of the '385 patent have been adjudged to be not unpatentable by the PTAB and the United States Court of Appeals for the Federal Circuit.

## COUNT I:  INFRINGEMENT OF THE '385 PATENT

48.    Cardiovalve repeats and realleges all of the allegations in the above paragraphs as though fully set forth herein.

49.    The '385 patent, entitled "Implant for Heart Valve," was duly issued by the USPTO on July 7, 2020, and lists Gil Hacohen as named inventor.

50.    Each claim of the '385 patent is valid and enforceable, and Edwards is estopped from raising any unpatentability ground that it reasonably could have raised in the IPR.

51.    Plaintiffs are in compliance with the patent marking requirements of 35 U.S.C. § 287 with respect to the '385 patent.

52.    Claim 11 of the '385 patent recites:

A method for use at a native valve of a heart of a subject, the valve including a first leaflet and a second leaflet, the method comprising:

[1] transluminally advancing, to the heart, an implant coupled to a delivery apparatus,

[2] the implant including

   [2a] a first clip,

   [2b] a second clip, and

   [2c] a support portion flexibly coupled to the first and second clips,

   [2d] the support portion having an opening that surrounds a central longitudinal

   axis of the implant,

   [2e] the first clip and the second clip fixedly coupled to each other,

[2f] the first clip including a first-clip arm, and the second clip including a second-clip arm,

[2g] the first-clip arm and the second-clip arm each having an end most displaceable from the central longitudinal axis of the implant, and

[3] the delivery apparatus including

[3a] a delivery tube and

[3b] at least one clip controller disposed within the delivery tube,

[4] the first-clip arm, the second-clip arm, and the support portion being disposed within the delivery tube during the transluminal advancing to the heart;

[5] advancing the implant out of the delivery tube by advancing the end of the first-clip arm and the end of the second-clip arm out of the delivery tube before advancing the support portion out of the delivery tube;

[6] forming the first leaflet and the second leaflet into a double-orifice arrangement by using the implant to couple a middle scallop of the first leaflet to a middle scallop of the second leaflet by, using the clip controller:

[6a] opening the first clip by deflecting the first-clip arm;

[6b] independently of opening the first clip, opening the second clip by deflecting the second-clip arm;

[6c] gripping the first leaflet with the first clip by closing the first clip by deflecting the first-clip arm; and

[6d] independently of gripping the first leaflet, gripping the second leaflet with the second clip by closing the second clip by deflecting the second-clip arm;

[7] decoupling the clip controller from the implant; and

[8] withdrawing the delivery apparatus from the subject.

**A.    Direct Infringement – 35 U.S.C. § 271(a)**

53.    Edwards and/or healthcare providers acting under Edwards' direction, control, or instruction, have directly infringed and continue to directly infringe one or more claims of the '385 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

54.    Edwards directly infringes by making, using, offering to sell, or selling within the United States, or importing into the United States, PASCAL, without authority or license to do so, and by using PASCAL according to its intended purpose, including for testing and demonstration.

55.    For example, on information and belief, Edwards infringes the '385 patent when it tests PASCAL and demonstrates PASCAL to potential customers, or when it controls or directs healthcare providers to test and demonstrate PASCAL using the claimed method.

56.    Additionally, healthcare providers directly infringe the '385 patent when they use PASCAL according to its intended purpose as directed and instructed by Edwards, as discussed further below.

57.    By way of example only, Edwards conducted a clinical trial of PASCAL on May 25, 2021, at the Oklahoma Heart Institute in Tulsa, Oklahoma.   Upon information and belief, the healthcare provider(s) who performed that procedure acted on behalf of Edwards and used PASCAL in a manner that directly infringed the '385 patent.

58.    Use of PASCAL according to its intended purpose satisfies each and every element of at least claim 11 of the '385 patent, and therefore infringes.

**1.    Preamble**

59.    The preamble of claim 11 recites:  "A method for use at a native valve of a heart of a subject, the valve including a first leaflet and a second leaflet, the method comprising:"

60.     The Figures below are still images from a video published on Edwards' website (the "Video"), which illustrates the "navigation and implant deployment" of PASCAL.[1]

61.     The web page on which the Video is hosted is directed to healthcare professionals, including those who would use PASCAL at the native heart valve of a patient.

62.     The native heart valve of a human patient includes at least a first leaflet and a second leaflet.

63.     In addition, the documentation provided by Edwards accompanying PASCAL, including the Instructions for Use attached hereto as **Exhibit D** (the "Instructions"), further illustrates that use of PASCAL performs the method claimed in the '385 patent and thereby infringes.

64.     As explained in more detail below, the Video and the Instructions illustrate that the use of PASCAL at a native heart valve of a patient practices the method claimed in the '385 patent.

65.     For at least these reasons, PASCAL satisfies the preamble of claim 11.

        **2.      Limitation [1]**

66.     Limitation [1] of claim 11 recites: "transluminally advancing, to the heart, an implant coupled to a delivery apparatus."

67.     As shown in **Fig. 1**, below, the PASCAL implant is transluminally advanced to the heart within a delivery tube, part of PASCAL's delivery apparatus, which is colored blue in the video.

---

[1] The video is published at https://www.edwards.com/healthcare-professionals/products-services/transcatheter-mitral-tricuspid-technologies/pascal-precision-system, under the tab labeled "Accurate and intuitive control.".  Plaintiffs incorporate by reference the entirety of this video, which depicts the infringing use of PASCAL; the still images included herein are intended for illustrative purposes only.



**Figure 1**

68. The Instructions likewise explain that the use of PASCAL "delivers the implant to the valve via a femoral vein access using a transvenous, transseptal approach."[2] Ex. D at 1.

69. For at least those reasons, PASCAL satisfies limitation [1] of claim 11 of the '385 patent.

### 3. Limitations [2], [2a]–[2g]

70. Limitations [2] and [2a]–[2g] of claim 11 collectively recite: "[2] the implant including [2a] a first clip, [2b] a second clip, and [2c] a support portion flexibly coupled to the first and second clips, [2d] the support portion having an opening that surrounds a central longitudinal axis of the implant, [2e] the first clip and the second clip fixedly coupled to each other, [2f] the first clip including a first-clip arm, and the second clip including a second-clip arm, [and] [2g] the

---

[2] The Instructions include labeled figures illustrating the terminology used to describe portions of the implant. *See* Ex. D at 9, 11. For purposes of this Complaint only, Plaintiffs use interchangeably the language of the Instructions and the '385 patent. Plaintiffs reserve the right to later identify different elements of PASCAL as corresponding to different claim elements than those identifications set forth herein.

first-clip arm and the second-clip arm each having an end most displaceable from the central

longitudinal axis of the implant."

71.     As shown in the Video, once at the native heart valve of a patient, the PASCAL

implant is advanced out of the delivery tube.

72.     As **Figs. 2** and **3** below illustrate, the implant comprises first and second clips,

formed by each set of proximal (gray) and distal (white) clip arms, which are fixedly coupled to

one another at the base of the implant.



**Figure 2**



**Figure 3**

73.     These clips satisfy limitations [2a], [2b], and [2e] of claim 11 of the '385 patent.

74.     As shown in the Video, the implant also comprises a support portion, *i.e.*, the larger element that extends proximally from the base of the clips and interfaces with the narrow blue tube.  The clips are flexibly coupled to the support portion, as the clips can move with respect to the support portion while remaining affixed thereto, as **Figs. 2** and **3** illustrate.

75.     For at least that reason, PASCAL satisfies limitation [2c] of claim 11 of the '385 patent.

76.     As further shown in the Video, the support portion has an opening which surrounds a central longitudinal axis of the implant, and each clip arm of the first and second clips has an end most displaceable from that central longitudinal axis; *e.g.*, as shown in **Fig. 3**, above, the proximal ends (*i.e.*, the "end most displaceable") of each clip arm may be manipulated towards and away from the axial center of the implant.

77.     For at least that reason, PASCAL satisfies limitations [2d], [2f], and [2g] of claim 11 of the '385 patent.

4.    **Limitations [3], [3a]–[3b]**

78.    Limitations [3] and [3a]–[3b] collectively recite "[3] the delivery apparatus including [3a] a delivery tube and [3b] at least one clip controller disposed within the delivery tube."

79.    As illustrated in **Fig. 1**, discussed above, the delivery apparatus includes a delivery tube.

80.    For at least that reason, PASCAL satisfies limitations [3] and [3a] of claim 11 of the '385 patent.

81.    Further, as shown in **Fig. 3**, above, the delivery apparatus also includes a clip controller disposed within the delivery tube.

82.    The Instructions further explain that the PASCAL implant is coupled to the delivery apparatus via the clip controller:  "The implant is provided attached to the implant catheter by sutures and a threaded shaft.  The implant catheter controls the deployment of the implant."  Ex. D at 1.

83.    For at least those reasons, PASCAL satisfies limitation [3b] of claim 11 of the '385 patent.

5.    **Limitations [4], [5]**

84.    Limitation [4] of claim 11 recites:  "the first-clip arm, the second-clip arm, and the support portion being disposed within the delivery tube during the transluminal advancing to the heart."

85.    Limitation [5] of claim 11 recites:  "advancing the implant out of the delivery tube by advancing the end of the first-clip arm and the end of the second-clip arm out of the delivery tube before advancing the support portion out of the delivery tube;

- 15 -

86.    As shown in **Fig. 2**, above, PASCAL advances the implant (including the clip arms and support portion) to the heart while disposed within the delivery tube.

87.    Further, the Instructions also explain that the PASCAL implant should be delivered in the "elongated" configuration, such that the ends of each clip arm are advanced out of the delivery tube (the "steerable catheter") before the support portion ("spacer") is advanced out of the delivery tube. Specifically, the Instructions make clear that using PASCAL involves "set[ting] implant in elongated position" before inserting it into the "steerable catheter" for insertion into the patient. Ex. D at 4.

88.    The "elongated" position is depicted in the Instructions, **Ex. D**, at page 10, and in **Fig. 2**, above. As shown, the clips are advanced out towards the native heart valve while the implant's support portion remains within the delivery tube.

89.    For at least those reasons, PASCAL satisfies limitation [4] of claim 11 of the '385 patent.

90.    As further shown in **Fig. 2**, PASCAL's implant is advanced out of the delivery tube by advancing the ends of the clip arms of the first and second clips before advancing the support portion.

91.    Further, as illustrated in the Instructions at Ex. D, page 10, the proximal ends of each clip arm (*e.g.*, the claimed "end most displaceable"), when folded in the delivery configuration, emerge from the delivery tube while the support portion remains entirely within the delivery tube.

92.    For at least those reasons, PASCAL satisfies limitation [5] of claim 11 of the '385 patent.

**6.    Limitations [6], [6a]–[6d]**

93.     Limitations [6] and [6a]–[6d] of claim 11 collectively recite: "[6] forming the first leaflet and the second leaflet into a double-orifice arrangement by using the implant to couple a middle scallop of the first leaflet to a middle scallop of the second leaflet by, using the clip controller:  [6a] opening the first clip by deflecting the first-clip arm; [6b] independently of opening the first clip, opening the second clip by deflecting the second-clip arm; [6c] gripping the first leaflet with the first clip by closing the first clip by deflecting the first-clip arm; and [6d] independently of gripping the first leaflet, gripping the second leaflet with the second clip by closing the second clip by deflecting the second-clip arm."

94.     As shown in **Fig. 3**, above, the PASCAL implant is positioned around a patient's native heart leaflets by independently opening and closing each clip.

95.     As further shown in **Fig. 3**, the clips of the PASCAL implant couple middle scallops of the first and second native heart leaflets using the clip controller coupled to the implant, which is shown as the narrower blue tube extending proximally from the top of the support portion, the gray coupling element, and the white wires attached to the proximal ends of the clip arms.

96.     **Fig. 3** illustrates that each clip of the PASCAL implant is opened and closed independently, because in this image, the clip on the left is closed around the native leaflet, while the clip on the right is being manipulated in an open position around the leaflet.

97.     Each clip of the PASCAL implant is opened by deflecting a respective clip arm, a leaflet is gripped, and then the clip is closed by deflecting the clip arm, using the clip controller to do so.

98.     Further, the Instructions make clear that each proximal clip arm of the PASCAL implant (which it calls "clasps") are configured to be opened and closed independently, using the respective clip controller (which it calls a "clasp slider") to grasp a leaflet.

99. As the Instructions state: "[a]dvance clasp slider(s) so the leaflet(s) are secured between the clasps and paddles [*i.e.*, the distal clip arms]. This can be performed for both leaflets simultaneously … or each leaflet individually." Ex. D at 5. This procedure is to be "reattempt[ed]" until the leaflets are securely grasped. *Id.*

100. For at least those reasons, PASCAL satisfies limitations [6a] – [6d] of claim 11 of the '385 patent.

101. **Figs. 4** and **5**, shown below, illustrate that the PASCAL implant is used to couple together a middle scallop of first and second native heart leaflets to achieve a double orifice configuration.



**Figure 4**



**Figure 5**

102.    Specifically, **Fig. 4** shows that the PASCAL implant has successfully coupled together the native heart valve leaflets and closed around them.

103.    **Fig. 5** illustrates the result achieved by the PASCAL implant; namely, that the native leaflets now form a double-orifice arrangement, depicted by the orifices shown on either side of the implant.

104.    Similarly, the Instructions direct a practitioner using PASCAL to couple the leaflets together, thereby forming a double-orifice configuration.

105.    As the Instructions state:  "Once leaflets are secured between the clasps and paddles, close the implant."  Ex. D at 5.

106.    For at least those reasons, PASCAL satisfies limitation [6] of claim 11 of the '385 patent.

**7.    Limitations [7] and [8]**

107.    Limitation [7] of claim 11 recites:  "decoupling the clip controller from the implant."

108.    Limitation [8] of claim 11 recites: "withdrawing the delivery apparatus from the subject."

109.    As shown in **Fig. 4**, above, PASCAL's clip controller has been decoupled from the implant.

110.    For at least that reason, PASCAL satisfies limitation [7] of claim 11 of the '385 patent.

111.    As further shown in **Fig. 4**, the PASCAL delivery apparatus, including both the clip controller and delivery tube, is withdrawn transluminally from the patient, once the clip controller has been decoupled from the implant.

112.    For at least that reason, PASCAL satisfies limitation [8] of claim 11 of the '385 patent.

113.    Similarly, the Instructions indicate that, once the desired configuration at the native heart valve is achieved, the delivery apparatus is decoupled from the PASCAL implant and withdrawn from the patient.  Ex. D at 5-6.

114.    For that additional reason, PASCAL satisfies limitations [7] and [8] of claim 11 of the '385 patent.

115.    Because PASCAL satisfies all limitations of claim 11, Edwards directly infringes at least claim 11 of the '385 patent.

**B.    Induced Infringement – 35 U.S.C. § 271(b)**

116.    In addition, or in the alternative, Edwards has induced, and continues to induce, direct infringement by third parties of one or more claims of the '385 patent under 35 U.S.C. § 271(b), either literally or under the doctrine of equivalents.

117.    Edwards infringes by inducing others to use, make, sell, or offer or sell in the United States, or import into the United States, PASCAL, without authority or license to do so.

- 20 -

118.    Edwards instructs customers of PASCAL to use the product as claimed, including through product documentation, illustrations, demonstrations, and videos, including those discussed above, which illustrate and instruct the infringing use of PASCAL.

119.    Furthermore, Edwards has packaged, promoted, and sold, and continues to package, promote, and sell, PASCAL with printed materials that instruct healthcare practitioners on its use.  The documentation accompanying PASCAL, including the Instructions discussed above, further illustrates Edwards' intent to induce infringement of the '385 patent.

120.    As noted, the Video and Instructions illustrate that the use of PASCAL as instructed and intended by Edwards infringes at least claim 11 of the '385 patent.

121.    By instructing its customers to use PASCAL in the claimed manner, Edwards has induced infringement of at least claim 11 of the '385 patent.

122.    Moreover, Edwards has been aware of the '385 patent since at least its filing of an IPR petition against the '385 patent on June 4, 2021.

123.    Thus, on information and belief, Edwards has been aware of its infringement of at least claim 11 of the '385 patent, as alleged in this complaint, since before it obtained FDA approval for PASCAL, and before it began selling and marketing PASCAL in the United States.

124.    On information and belief, Edwards filed and maintained its IPR petition against the '385 patent because it was aware of a high risk of infringement of at least claim 11 of the '385 patent.

125.    Moreover, after failing to prevail in its IPR of the '385 patent—that is, after the PTAB held in a Final Written Decision that the claims of the '385 patent are not unpatentable, and after the Federal Circuit unanimously affirmed that determination—Edwards knows or should

know that it has no viable defense to infringement and is estopped from raising invalidity grounds that reasonably could have been raised in IPR.

126.    For at least those reasons, Edwards and its principals knew it was highly likely that Edwards' actions constituted infringement of the '385 patent.

127.    Furthermore, Edwards is and has been aware that healthcare providers use PASCAL in accordance with the methods of use set forth in Edwards' Video and Instructions described above and, therefore, that healthcare providers acting at Edwards' instruction or direction directly infringe at least claim 11 of the '385 patent.

128.    Accordingly, Edwards actively, knowingly, and specifically intended to induce, and induced, and continues to actively, knowingly, and specifically intends to and does induce, direct infringement of at least claim 11 of the '385 patent by selling and marketing PASCAL for its intended use.

129.    For the same reasons, Edwards' infringement of the '385 patent has been and continues to be willful.

C.    **Contributory Infringement – 35 U.S.C. § 271(c)**

130.    In addition or in the alternative, Edwards has contributed, and continues to contribute, to the direct infringement by third parties of one or more claims of the '385 patent under 35 U.S.C. § 271(c), either literally or under the doctrine of equivalents.

131.    Edwards infringes by making, selling and/or offering for sale in the United States, and/or importing into the United States, PASCAL, without authority or license to do so.

132.    Edwards does so with knowledge that PASCAL constitutes a material part of the inventions of the '385 patent.

133.    Edwards further does so with knowledge that PASCAL is especially made or adapted to infringe the '385 patent.

- 22 -

134.    Edwards further does so with knowledge that PASCAL is not a staple article or commodity of commerce suitable for substantial non-infringing use.

135.    By way of example, in various public communications, Edwards has touted features of PASCAL that are patented by Cardiovalve.

136.    For instance, in a press release on its website announcing the FDA approval of PASCAL, attached hereto as **Exhibit E**, Edwards highlighted the "independent grasping" of the leaflets, and the implant's "ability to elongate," *i.e.*, to achieve the configuration for delivery in which the ends of the clip arms are advanced out of the delivery tube prior to advancing the support portion, both features claimed in the '385 patent.

137.    Edwards further noted that the PASCAL implant clips together the native leaflets to achieve a double-orifice configuration just like "a treatment developed in cardiac surgery called the Alfieri stitch," which falls within the scope of the '385 patent.  Ex. E.

138.    As noted, the Video and Instructions illustrate that use of PASCAL directly infringes at least claim 11 of the '385 patent.

139.    As further noted above, on information and belief, Edwards filed and maintained its IPR petition against the '385 patent because it was aware of a high risk of infringement of at least claim 11 of the '385 patent.

140.    Moreover, after failing to prevail in its IPR of the '385 patent, Edwards knows or should know that it has no viable defense to infringement and is estopped from raising invalidity defenses that reasonably could have been raised in IPR.

141.    For all of those reasons, by designing, manufacturing, using, and/or selling PASCAL with no substantial uses other than to operate in a way as claimed in the '385 patent, Edwards has contributorily infringed at least claim 11 of the '385 patent.

142.    For the same reasons, Edwards' infringement—whether direct, induced, and/or contributory—of the '385 patent has been and continues to be willful.

*   *   *

143.    For all of the above reasons, Edwards is liable for infringement and willful infringement of the '385 patent, and its actions render this case exceptional, pursuant to 35 U.S.C. §§ 271(a), (b), (c), 284, and 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Edwards and grant to Plaintiffs the following relief:

a.    Find that Edwards is infringing the '385 patent in violation of 35 U.S.C. § 271(a), (b), and (c);

b.    Award Plaintiffs damages in an amount adequate to compensate Plaintiffs for Edwards' infringement of the '385 patent;

c.    Enter an order trebling any and all damages awarded to Plaintiffs by reason of Edwards' willful infringement of the '385 patent pursuant to 35 U.S.C. § 284;

d.    Enter an order permanently enjoining Edwards, its officers, directors, agents, servants, employees, and all other persons in privity or acting in concert with it who receive actual notice of the order by personal service or otherwise, from any further acts of infringement of the '385 patent;

e.    Enter an order awarding Plaintiffs interest on damages awarded and their costs pursuant to 35 U.S.C. § 284;

f.    Enter an order finding that this is an exceptional case and awarding Plaintiffs their reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

g.     Award such other and further relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully request a trial by jury on all issues properly triable by jury in this action.

Dated:  January 14, 2026

WILLKIE FARR & GALLAGHER LLP          YOUNG CONAWAY STARGATT & TAYLOR, LLP

Sara Tonnies Horton*                  _____
300 North LaSalle                     Melanie K. Sharp (No. 2501)
Chicago, IL 60654                     Robert Vrana (No. 5666)
Tel: (312) 728-9050                   Gianna C. Penezic (No. 7442)
shorton@willkie.com                   1000 North King Street
                                      Wilmington, DE  19801
Devon W. Edwards*                     (302) 571-6600
787 Seventh Ave.                      msharp@ycst.com
New York, NY 10019                    rvrana@ycst.com
Tel: (212) 728-8000                   gpenezic@ycst.com
dedwards@willkie.com

Dane D. Sowers*
1875 K. Street, N.W.
Washington, DC 20006
Tel: (202) 303-1000
dsowers@willkie.com

*Attorneys for Plaintiffs*

*\*Pro Hac Vice Applications Forthcoming*

.